UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**
MAY 2 5 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-308-GWU

GLENDA GODSEY,                                                 PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

      Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Godsey

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Godsey

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Godsey

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

Godsey

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glenda Godsey, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, mild degenerative changes in the thoracic spine, degenerative disc disease at L4-L5, and depression. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 19-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to work not involving dangerous, moving machinery or sharp objects, could perform no jobs involving heights, climbing, or balancing, could perform no driving, could not work at temperature extremes, and, generally would have to work where she would not be a danger to herself or others. (Tr. 243-4). She would be restricted to simple, non-detailed tasks where co-worker and public contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workplace were infrequent and gradually introduced. (Id.).

7

Godsey

The VE responded that there were jobs at the light level that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 244).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff was involved in a motor vehicle accident in January, 2001, and diagnosed with cervical strain. (Tr. 127). A lumbar spine x-ray showed some disc space narrowing at L4-L5 which was considered to be likely degenerative disc disease, but there was no definite fracture or misalignment. (Tr. 128). The thoracic spine x-ray showed minimal degenerative disc disease, and x-rays and a CT scan of the cervical spine were negative. (Tr. 130-31). She was advised by an emergency room physician to wear a cervical collar and follow up with her primary care physician as soon as possible. (Tr. 127).

Medical records from the plaintiff's treating family physician, Dr. Richard Park, show that he asked her to remove the cervical collar only a few days after the accident, and his examination was essentially normal, apart from some lacerations and contusions. (Tr. 159-60). Gradually the patient began complaining of more stiffness and soreness, and Dr. Park prescribed both home neck traction and physical therapy, which the plaintiff found to be helpful. (Tr. 157-8). However, the plaintiff's insurance ran out, and she was unable to continue. (Tr. 156). Her

8

Godsey

complaints shifted more to lower back pain and, by August, 2001, she informed Dr. Park that she intended to apply for Social Security. (Tr. 155).

State agency physicians who reviewed the record at approximately this point concluded that the plaintiff did not have a "severe" impairment. (Tr. 161, 192). Psychological reviewers found no evidence of a medically determinable impairment. (Tr. 162, 177).

In September, 2001, shortly after her applications for DIB and SSI, the plaintiff completed a questionnaire indicating that she could not drive due to dizziness, and had difficulty with bending over because of pain in her back, but she was able to lift up to 20 pounds and run errands as long as someone else drove her. (Tr. 88-9). Her son helped her with chores, but she was able to do some activities such as laundry, dusting, making beds, shopping for groceries, visiting her boyfriend three or four times a week, walking across the street to friends several times a week, and making overnight visits to friends or relatives. (Tr. 89-90).

Subsequently, Dr. Park began noting trigger point tenderness suggestive of fibromyalgia (Tr. 198) and, by April, 2002, was finding that the plaintiff was "tender in all trigger points, particularly up in the trapezius and lumbar areas." (Tr. 196). He increased her prescription of the medication Zanaflex, added Remeron for sleep, and gave instructions for exercises for leg cramps. (Id.). The physician also subsequently gave samples of the medications Bextra and Celexa, which the plaintiff reported were helpful. (Tr. 195-6).

9

Godsey

On November 1, 2002, Dr. Park wrote a letter stating that the plaintiff had severe fibromyalgia, depression, and had difficulty concentrating and maintaining the normal thought processes demanded for "a lot of daily activities." (Tr. 202). Unspecified personal problems had aggravated her difficulty. She was on medication for "depression and muscles," and was "unable to work at this time." (Id.).

The ALJ rejected Dr. Park's opinion as being unsupported by objective findings such as "serological testing" and because he "did not refer the claimant to any inflammatory disease specialist, or any other specialist." (Tr. 17). Based on her activities of daily living, he found that she was capable of performing light work with certain other restrictions. (Tr. 19).[1]

While Sixth Circuit precedent establishes that a diagnosis of fibromyalgia can be based on the type of "trigger point" examination given by Dr. Park, see Preston v. Secretary of Health and Human Services, 854 F.2d 815 (6th Cir. 1988), the plaintiff has not raised this issue on appeal.[2] Moreover, Dr. Park never discussed any specific functional restrictions, and gave only a vocational opinion that the plaintiff was unable to work. Such a vocational conclusion is clearly outside his area

---

[1]The ALJ's ultimate functional capacity assessment differed somewhat from the hypothetical question presented at the hearing, but the hypothetical presented more, not fewer, limitations.

[2]In addition, the plaintiff's attorney has not raised this issue, or any other issue, on appeal, other than to make the general statement that she was unable to perform any gainful employment existing in significant numbers. No reasons are specified.

10

Godsey

of expertise. See 20 C.F.R Sections 404.1527(e); 416.927(e)(2004). Also, the information provided by the plaintiff at the time of her disability application did indicate that she could perform the equivalent of "light" level lifting, perform some household chores, and maintain a fairly active social life. Her testimony at the administrative hearing a year later indicated that she was much more restricted (e.g., Tr. 242), but the ALJ could reasonably have relied on her earlier statements, which also fell within the relevant period. If the plaintiff's condition has worsened, she can file a new application for benefits.

The decision will be affirmed.[3]

This the __25__ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]At the administrative level, the plaintiff was represented by the same attorney who represents her on appeal to this Court, but there is no indication that he attempted to obtain a statement regarding the plaintiff's actual functional capacities. Counsel obtained an additional medical examination which was submitted to the Appeals Council, but this report also has no specific restrictions and only contains conclusory statements regarding fitness for employment. (Tr. 231-2). Even if "good cause" existed for failing to obtain this evidence earlier, as per §405(g), it is not material, in that it provides no basis for changing the administrative decision.